WELLFORD, Circuit Judge.
 

 Plaintiff, William J. Blanton, a fifty-one year old resident of Rush, Kentucky, filed a wrongful discharge claim against Inco Alloys International, Inc. (“Inco”), a Delaware cor
 
 *106
 
 poration registered to do business in Kentucky. Inco employed Blanton in its Bur-naugh, Kentucky plant beginning September of 1966 as a janitor. Eventually, Blanton became extrusion press crew leader, a position he held for many years until the events that brought about this lawsuit.
 

 On August 31, 1991, while performing his duties as extrusion press crew leader, Blan-ton injured his back. He continued to work intermittently for some months, despite his pain. He underwent physical therapy' for about four weeks, and was prescribed various medications for pain management. On April 7, 1992, Blanton stopped working altogether pursuant to the recommendation of his family physician, Dr. Collins, who ordered him to refrain from working due to the deterioration of his condition. Blanton was later released to resume light duty work beginning February 8,1993.
 

 Upon his return to work, Blanton met with Craig Dickson, Inco’s operations manager, and A.B. Perry, a union grievance representative. Blanton informed them that he believed he was able to perform all the necessary duties of his old position of extrusion press crew leader with reasonable accommodations as defined by Ky.Rev.Stat. § 344.030(6). Blanton stated that he could no longer knock out die blocks with a sledge hammer, but could assign that duty to another member of the crew. After receiving evaluations by two company physicians and studying the physical restrictions that would be needed if Blanton were to return, Dickson informed Blanton that he was unable to offer Blanton any continued employment, particularly in his former job. Dickson told Blanton that he could either be terminated or apply for disability retirement benefits. Blanton claims that Dickson offered him no other vacant position at that time. Therefore, he chose to apply for disability benefits. In connection with his application for disability benefits, Blanton submitted letters from his doctors in the general form suggested by Dickson to the effect that he was totally disabled with respect to his job.
 
 [1]
 
 Blanton has been receiving disability retirement payments for several years.
 

 In June of 1993, to supplement his decrease in wages, Blanton applied for social security benefits, claiming that he was totally disabled. The Social Security Administration denied those benefits, finding Blanton qualified to perform light duty work. Blan-ton also applied for workers’ compensation benefits. In those proceedings, Blanton claimed that he was 100 percent disabled. Inco opposed that assertion, claiming that Blanton was only partially disabled. The AL J approved a settlement wherein the parties agreed to a 25 percent disability rate, and Blanton received the benefits of that settlement based upon his claim that he was unable to work.
 

 Blanton sued Inco in state court for disability discrimination under Ky.Rev.Stat. §§ 344,
 
 et seq.
 
 (1993 & Supp.), arising out of his allegedly forced resignation.. Inco removed the case to federal court based upon diversity jurisdiction. Blanton’s claim is based on the following statutory provision:
 

 It is an unlawful practice for an employer:
 

 (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, ... because the person is a qualified individual with a disability ... [or]
 

 (2) To limit, segregate, or classify employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee, ... because the person is a qualified individual with a disability....
 

 Ky.Rev.Stat. § 344.040(1) and (2). To be eligible under the statute, one must be a “qualified individual,” which is an individual who, with or without reasonable accommodation, can perform the essential functions of. the employment position.
 
 See
 
 Ky.Rev.Stat. § 344.030(1). The district court found that although Blanton was disabled, he was not otherwise qualified for the job of extrusion
 
 *107
 
 press crew leader because he could not perform the essential functions of his job. Furthermore, the district court found that “it is clear that defendant was unable to consider a viable, reasonable accommodation which would have allowed Plaintiff to continue as press crew leader.” Blanton then filed a motion to alter, vacate or amend the judgment wherein he argued that the district court did not properly consider his claim that Inco should have accommodated him by transferring him to a vacant position. In denying Blanton’s motion, the court stated that the “transfer” argument was not previously presented to the court, but that even if it had been presented, “the Court would reach the same conclusion for the simple reason that the Plaintiff, by his own admission, was totally disabled during the time relevant to this action.”
 

 We review the district court’s grant of summary judgment
 
 de novo,
 
 viewing the evidence in the light most favorable to Blanton, the non-moving party.
 
 D’Aprile v. Fleet Services Corp.,
 
 92 F.3d 1, 3 (1st Cir.1996). Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).
 

 The first issue in this case is whether the district court was correct in finding that Blanton could not perform the essential functions of his job as extrusion press crew leader. In identifying the job’s “essential functions,” the district court relied on the Department of Labor’s definition of the position in the
 
 Dictionary of Occupational Titles,
 
 which describes the job’s duties in detail and categorizes it as “medium” in terms of physical demand. According to that definition, medium work requires exerting 20 to 50 pounds of force occasionally,
 
 [2]
 
 10 to 25 pounds of force frequently,
 
 [3]
 
 or an amount greater than negligible, and up to 10 pounds of force constantly.
 

 The court compared the job’s text-book requirements with reports from various doctors, including Blanton’s personal physician Dr. Collins, who all placed certain restrictions on Blanton upon his return to work. Dr. Collins issued written restrictions stating that Blanton was to perform work of light physical demand, not to exceed lifting 20 pounds occasionally or 10 pounds frequently, carrying 9 pounds constantly or 37 pounds occasionally, pushing 15 pounds constantly or 30 pounds occasionally, pulling 10 pounds frequently or 20 pounds occasionally and no squatting whatever. The court also noted other doctors’ opinions that Blanton could not return to work at full capacity. .The record reflects the following medical opinions during the relevant period relating to Blan-ton’s physical restrictions:
 

 1. Dr. James Powell, another treating physician, in February of 1993, “wrote [Blanton] a note that he was unsuitable for any employment at the plant” (“permanently disabled”).
 

 2. Dr. Triplett, a chiropractor, indicated on December 30, 1991, that “his job continues to reaggravate his condition.”
 

 3. Dr. Czerkawski’s opinion as of February, 1993, was that due to chronic back pain and problems attendant to the numerous drugs and medications Blan-ton was taking “I did not feel it would be wise for him to work in that type of capacity.”
 

 4. Dr. Nadar indicated in May, 1993, that Blanton “at present continues to be disabled” and he was “afraid to recommend any physical therapy program as the prior treatments have not helped him,” but he felt that in the future he should be able to perform work activities “with some [unspecified] restrictions.”
 

 5. Blanton testified that Dr. Tibbs of Lexington, Kentucky, to whom he was referred in late 1991, “told me I tore a facette loose in my back and there wasn’t nothing that could be done for it.”
 

 6. Dr. Jose Rieard evaluated Blanton on February 20,1993, and concurred with Dr. Collins that Blanton could not re
 
 *108
 
 turn to work at full capacity or in Ms former occupation. Dr. Ricard was also concerned about Blanton’s heavy medications and working around heavy machinery.
 

 We agree with the district court that the overwhelming weight of the medical evidence shows that Blanton could not have returned to Ms job as extrusion press crew leader in February of 1993 without exceeding the physical limitations as described by Ms own doctor and others in the medical conimurnty.
 

 Additionally, the district court noted that Blanton’s own • admissions in Ms application for Social Security benefits showed that he was' unable to perform Ms position as extrusion press crew leader. In connection with that application, Blanton stated that his former job required him to lift and carry over 50 pounds frequently and occasionally required that he carry 70 to 80 pound mandrels. He also explained, “I can’t bend_ or I can’t squat. ■ I can’t reach. I am in so much pain. I have had nerve blocks wMch didn’t help my back.” Blanton argued that those statements should not be used against Mm because he acted under duress in pursuing those benefits because he was forced to choose between termination or retirement. The district court specifically rejected that claim and found that, as a result of the representations in his Social Security application, Blanton was estopped from now claiming that he was able to perform the essential functions of his job.
 

 The doctrine of judicial estoppel operates to prevent a party who has successfully maintained a certain position m one proceedmg from assertmg a contrary position in another proceeding.
 
 Edwards v. Aetna Life Ins. Co.,
 
 690 F.2d 595, 598-99 (6th Cir.1982);
 
 see also Smith v. Dovenmuehle Mortgage, Inc.,
 
 859 F.Supp. 1138, 1141 (N.D.Ill.1994). The doctrine serves the purpose of protecting the integrity of the courts by preventmg the system from bemg mampulated by “chameleomc litigants.”
 
 Id.; see United States v. Owens,
 
 54 F.3d 271, 274-75 (6th Cir.1995);
 
 Reynolds v. C.I.R.,
 
 861 F.2d 469, 472-73 (6th Cir.1988);
 
 see also McNemar v. Disney Store, Inc.,
 
 91 F.3d 610, 616-17 (3d Cir.1996);
 
 Yanez v. United States,
 
 989 F.2d 323, 326 (9th Cir.1993). A district court may apply the doctrine of judicial estoppel at its own discretion.
 
 McNemar,
 
 91 F.3d at 617.
 

 As noted above, in the application for Social Security benefits he filed on March 1, 1993, Blanton mdicated that, he could not bend or squat, and that he was in great pain.
 
 [4]
 
 When he applied for disability retirement benefits with Inco on the same day, he stated that he had been “unable to work because of my disabling condition” and maintained that he was “still disabled.” Blanton also testified in 1994 that he “still had the same problem— no better than it was.”
 

 In light of the above admissions, we believe that the district court did not abuse its discretion in finding that Blanton’s previous representations prevent him from now claiming that he was able to perform the essential functions of Ms job as extrusion press crew leader. As a result of Ms claimed disability, Blanton has been receiving disability benefits from Inco for some time now.
 
 See Reigel v. Kaiser Foundation Health Plan of N.C.,
 
 859 F.Supp. 963, 969-70 (E.D.N.C.1994) (plaintiff who collected disability benefits for several years cannot successfully maintain that she can perform the essential functions of her job). Furthermore, although the Social Security Admimstration demed benefits, it found specifically that Blanton could not do any of his past work as extrusion press crew leader.
 

 Because Blanton successfully asserted that he could not perform the functions of an extrusion press crew leader in those earlier quasi-judicial proceedmgs, he should not be allowed' to assert a contrary position in tMs forum.
 
 See Smith v. Montgomery Ward & Co.,
 
 388 F.2d 291, 292 (6th Cir.1968);
 
 see also August v. Offices Unlimited., Inc.,
 
 981 F.2d 576 (1st Cir.1992);
 
 D’Aprile v. Fleet Servs. Corp.,
 
 92 F.3d 1 (1st Cir.1996). In light of the overwhelmmg weight of the medical evidence, as well as Blanton’s own admissions,
 
 *109
 
 we find that Blanton was unable to perform his former position of extrusion press crew leader as a matter of law.
 
 [5]
 

 Blanton’s alternative position is that, even if he could not have performed the job of extrusion press crew leader, Inco should have considered transferring him to any available lighter duty position as a reasonable accommodation. Furthermore, Blanton claims that even if no such position were available, he should have been allowed to bump a junior employee in another position for which he may have been qualified as was consistent with Inco’s policy. Blanton relies on Ky.Rev.Stat. § 844.030(6), which states that providing a “reasonable accommodation” includes:
 

 ... making existing facilities used by employees readily accessible to and useable by individuals with disabilities, job restructuring, part-time or modified work schedules,
 
 reassignment to a vacant position,
 
 acquisition of or modification of equipment or devices, appropriate adjustments or modifications of examinations, training materials or policies, the provisions of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
 

 (Emphasis added). Blanton argues that “no other accommodation was offered by Inco [nor did they discuss with him] the possible accommodation of Blanton moving into another position in the plant,” in light of his long years of service.
 

 The district court rejected Blanton’s “transfer” argument much for the same reason that it rejected his initial argument. The court found that Blanton was estopped from asserting that he could have performed other jobs because he previously stated in quasi-judicial proceedings that he was totally disabled.
 
 [6]
 
 We believe that this application of judicial estoppel was erroneous under these circumstances.
 

 As indicated in the discussion above, judicial estoppel should be applied to
 
 successful
 
 assertions made in one proceeding when a contrary assertion is made in another.
 
 See Coal Resources, Inc. v. Gulf & Western Industries, Inc.,
 
 865 F.2d 761, 773 (6th Cir.1989) (the doctrine of judicial estoppel applies “only when the party successfully asserts a position”). Again, Blanton did make a successful bid for retirement benefits at Inco by asserting that he was totally disabled. However, it is apparent that at the pertinent times Blanton sought to work at Inco but Inco did not afford any such work to Blanton. When Blanton inquired about his options, Inco’s response was that Blanton should either file for disability benefits or be terminated. Under those circumstances, Blanton’s “application for disability benefits in this case may not have constituted the broad admission of incapacity” as the district court indicated.
 
 D’Aprile,
 
 92 F.3d at 4-5 (if an employer refuses an accommodation that would allow an employee to perform his job, the employee’s subsequent claim of total disability for purposes of obtaining disability benefits does not constitute an admission).
 

 Additionally, although Blanton argued to the Social Security administration that he was totally disabled, his position was not successful, and he was found to have been capable of performing light duty work. Thus, he should not now be estopped from claiming that he was capable of performing
 
 *110
 
 other jobs.
 
 See Overton v. Reilly,
 
 977 F.2d 1190, 1196 (7th Cir.1992) (Social Security Administration’s decision to award disability benefits does not necessarily mean that recipient is unable to find employment). Also, in Blanton’s attempt to secure workers’ compensation benefits, he argued that he was 100 percent disabled, but the parties reached a compromise settlement. Generally, when a civil ease is settled prior to litigation, there has been no “successful” position asserted by either party.
 
 See Reynolds,
 
 861 F.2d at 473. Under all of these circumstances, where both parties have taken a contrary position in prior proceedings and both positions can be supported by other evidence, we believe that estoppel should not be applied to prevent Blanton from now claiming that he may be able to work in a light duty position at Inco.
 

 It is unclear from the record whether Blanton made a specific request to Inco for any
 
 other
 
 work besides, his former job, or whether Inco offered him any other work. There was substantial evidence that Blanton may have been physically able to perform jobs other than extrusion press crew leader. Blanton lists several positions in his brief that he claims were available at the time he met with Dickson. Dr. Collins stated in her deposition that “there would probably be a lot of jobs that [Blanton] could perform well within [his] restrictions.” Additionally, Dr. Powell suggested that Blanton seek out suitable light duty employment to help his back, and the Social Security Administration denied Blanton benefits because it found that Blanton had “the ability to do some type of work activity.”
 

 We conclude that the district court did not adequately address Blanton’s claim that Inco failed to provide reasonable accommodation through a reassignment to a vacant position.
 
 See
 
 Ky.Rev.Stat. 344.030(6). Viewing the evidence in a light most favorable to Blanton in this regard, we believe that summary judgment was inappropriate because there exists a genuine issue of material fact as to whether Inco satisfied its obligation to accommodate Blanton by allowing him the opportunity to be transferred to another position, if he was capable of performing in that position.
 

 In light of the foregoing, we AFFIRM in part and REVERSE in part, and REMAND for further consideration of the issue whether Inco faded to reasonably accommodate Blan-ton by not considering him for transfer to a vacant position. We effectuate this remand by setting aside that part of the district court’s summary judgment holding that Blanton was “unable to perform routine tasks” with respect to Inco’s duty to accommodate.
 

 [1]
 

 . We find nothing sinister or untoward about Dickson advising Blanton regarding the nature of medical information required to obtain disability retirement benefits.
 

 [2]
 

 . Occasionally is defined as up to one-third of the time.
 

 [3]
 

 . Frequently is defined as one-third to two-thirds of the time.
 

 [4]
 

 . We are mindful that Blanton later withdrew his claim for Social Security benefits because he was allegedly ready to return to work.
 

 [5]
 

 . When Dickson offered Blanton disability retirement benefits in March, 1993, he had been informed that Blanton was taking, on a daily basis, many drugs that were contraindicated with working with heavy machinery. Though it is not necessary to our ruling here, we note that Ky.Rev. Stat. § 344.030(6), which deals with “reasonable accommodations,” cannot sensibly be construed to require an employer to place an injured and disabled worker, who represents a hazard to himself and others, in a job involving operation of complex and heavy machinery.
 

 [6]
 

 . As indicated above, the district court found that Blanton "did not previously present this argument to the Court.” We find, however, that Blanton did raise this issue in his Memorandum Opposing Inco's Motion for Summary Judgment, arguing explicitly that "[n]o job was offered to Mr. Blanton under [the “bumping”] system,” even though he may have been capable of performing such other jobs.
 
 See
 
 Memorandum in Opposition at pp. 11-13. Blanton also cited to the report of Dr. Collins in support of his argument that he would have been fit for other jobs at Inco.
 
 Id.
 
 at 12. Because Blanton is on record as having raised this issue before the district court, we will address it on the merits.