**Willard E. HAYES, Plaintiff,**

v.

**SCRUGGS, INC., Defendant.**

**No. 3:96–CV–727.**

United States District Court, E.D. Tennessee.

Dec. 5, 1997.

Stephen T. Hyder, Knoxville, TN, for Plaintiff.

Barry K. Maxwell, Mary J. Borden, Egeerton, McAfee, Armistead & Davis, PC, Knoxville, TN, for Defendant.

## MEMORANDUM OPINION

JARVIS, District Judge.

This is an action for disability discrimination brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Plaintiff claims that the defendant

failed to rehire him because of his disability and/or his record of disability. Currently pending is the defendant's motion for summary judgment [Doc. No. 14] and defendant's motion to stay discovery [Doc. No. 16]. For the reasons that follow, defendant's motion for summary judgment [Doc. No. 14] shall be granted in part and denied in part. Defendant's motion to stay discovery [Doc. No. 16] shall be denied.

## I. Factual Background

Defendant is in the business of distributing food service equipment and supplies. Plaintiff was hired by defendant on April 13, 1984, to perform the job of installer. In February, 1992, plaintiff was diagnosed with a cancerous brain tumor and was unable to continue his employment because of double vision and balance problems. On March 1, 1992, plaintiff took a medical leave of absence from his employment. At that time, plaintiff was performing the job of installation foreman, in which he supervised and trained other installers.

Just prior to taking medical leave, plaintiff met with Scruggs' officials who indicated to him that he would be rehired when his physical problems were resolved. Plaintiff successfully pursued medical treatment for his tumor, and on January 30, 1995, he was released to return to work. On February 1, 1995, plaintiff contacted defendant's president, Lee Scruggs, and requested to be rehired in his previous job. Mr. Scruggs replied as follows: "I don't feel comfortable with a person with your sickness working under my employment. You are too big a risk to my company and other employees. I don't have anything for you." [Doc. No. 9]. Plaintiff states that he made several other unsuccessful attempts to secure employment with defendant. Plaintiff further alleges that defendant has filled at least two positions for which he was qualified and in which in could perform.

On August 17, 1992, plaintiff filed an application with the Social Security Administration ("SSA") for disability insurance benefits, claiming that he was totally unable to work due to a disabling condition which began on July 28, 1992. [Doc. No. 15, Exhibit A].

Plaintiff's application for benefits was approved, and payments began on January 1, 1993. [Doc. No. 15, Exhibit M]. In January, 1996, the SSA reviewed plaintiff's case to determine whether he still had a disability. In response to this review, plaintiff submitted forms to the SSA stating that he was still unable to work because he had "balance problems" and "double vision". [Doc. No. 15, Exhibits B, C]. On May 3, 1996, SSA informed plaintiff that he was no longer considered disabled, and his benefits were to terminate on July 31, 1996. [Doc. No. 15, Exhibit E]. On May 7, 1996, plaintiff requested SSA to reconsider the decision to discontinue his benefits, and indicated that he was "still unable to work [because of] double vision." [Doc. No. 15, Exhibit G]. On February 28, 1997, SSA notified plaintiff that, after reconsideration, it had determined that plaintiff was no longer disabled and his benefits would be terminated. [Doc. No. 15, Exhibit I]. Plaintiff subsequently filed a request for a hearing before an administrative law judge, stating that he disagreed with SSA's determination because he "[couldn't] hold down a job." [Doc. No. 15, Exhibit J]. Presumably, plaintiff's request for hearing is still pending before SSA.

## II. Summary Judgment Standards

Pursuant to Rule 56, Federal Rules of Civil Procedure, summary judgment shall be rendered when requested if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although the moving party bears the initial burden, it need not support its motion with affidavits or other materials *"negating"* the opponent's claim. *Id.* at 323 (emphasis in original); *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623, 626 (6th Cir.1987). Rather, "the burden on the moving party may be discharged by

'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325.

Once the moving party carries its initial burden of showing that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to come forward with specific facts to show that there is a genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

Upon review of all of the evidence relevant to the motion for summary judgment, a court should, after viewing the evidence in the light most favorable to the non-moving party, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th cir.1991), *cert. denied,* 503 U.S. 939 (1992). Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby,* 477 U.S. at 250; *Stein v. National City Bank,* 942 F.2d 1062, 1064 (6th Cir.1991).

### *III. Americans with Disabilities Act*

■ The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application, hiring, advancement, or discharge of employees ..." 42 U.S.C. § 12112(a). In order to establish a violation of the ADA, plaintiff must show that: (1) he is an individual with a

disability; (2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) he was not rehired by defendant solely by reason of his disability. *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1178 (6th Cir.1996). Defendant contends that it is entitled to summary judgment because the plaintiff cannot, as a matter of law, establish the second element, *i.e.* that he was able to perform the essential functions of his job at Scruggs, Inc., with or without reasonable accommodation. Specifically, defendant contends that plaintiff should be judicially estopped from claiming that he is "qualified" because of his previous application to the SSA wherein plaintiff admitted that he was disabled from .working.

■ The doctrine of judicial estoppel prevents a party who has successfully maintained a position in one proceeding from asserting a contrary position in another proceeding. *Blanton v. Inco Alloys Intern., Inc.,* 108 F.3d 104, 108 (6th Cir.1997) (citing *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598–99 (6th Cir.1982); *Smith v. Dovenmuehle Mortgage, Inc.,* 859 F.Supp. 1138, 1141 (N.D.Ill.1994)). "The doctrine serves the purpose of protecting the integrity of the courts by preventing the system from being manipulated by 'chameleonic litigants.'" *Blanton,* 108 F.3d at 108 (citing *United States v. Owens,* 54 F.3d 271, 274–75 (6th Cir.1995); *Reynolds v. C.I.R.,* 861 F.2d 469, 472–73 (6th Cir.1988)) (citations omitted). This court may apply the doctrine of judicial estoppel at its own discretion. *Blanton,* 108 F.3d at 108.

■ In *Blanton,* the plaintiff, an extrusion press crew leader, injured his back at work. *Id.* at 106. When he returned to work, Blanton informed company management that he believed that he was able to perform all the necessary duties of his old position except that he could no longer knock out die blocks with a sledge hammer. *Id.* Blanton suggested that he could assign this function to another member of the crew. *Id.* Company management disagreed with Blanton and told him that he could either be terminated or apply for disability retirement benefits. *Id.* Blanton claimed that he was

offered no other position within the company and so he decided to apply for disability benefits. *Id.*

Blanton subsequently applied for disability retirement benefits through the company, social security disability benefits through the SSA, and workers compensation benefits. *Id.* He received workers compensation and disability retirement benefits but his social security disability benefits were denied by SSA. *Id.* at 107. In connection with his application for social security benefits, Blanton stated that he was unable to perform his position as extrusion press crew leader. *Id.* at 108. Blanton also stated that his former job required him to lift and carry over 50 pounds frequently and occasionally required that he carry 70 to 80 pound mandrels. *Id.* In the application for benefits, he stated, "I can't bend … or I can't squat. I can't reach. I am in so much pain. I have had nerve blocks which didn't help my back." 108 F.3d at 107.

The Sixth Circuit Court of Appeals affirmed in part the district court's grant of summary judgment, stating as follows:

> [b]ecause Blanton successfully asserted that he could not perform the functions of an extrusion press crew leader in those earlier quasi-judicial proceedings, he should not be allowed to assert a contrary position in this forum. In light of the overwhelming weight of the medical evidence, as well as Blanton's own admissions, we find that Blanton was unable to perform his former position of extrusion press crew leader as a matter of law.

108 F.3d at 109 (citations omitted).

Although it appeared as though the Sixth Circuit had judicially estopped plaintiff from claiming that he could perform his old job, the court later supplemented its initial decision and observed as follows:

> [t]he panel's opinion should not be read to endorse judicial estoppel in this context. We simply held that '[i]n light of the overwhelming weight of the medical evidence, as well as Blanton's own admissions we find that Blanton was unable to perform his former position of extrusion press crew leader as a matter of law.' We agree with the D.C. Circuit's opinion in *Swanks v.*

*Washington Metropolitan Area Transit Auth.,* 116 F.3d 582 (D.C.Cir.1997), that holds that the receipt of disability benefits does not preclude subsequent ADA relief and rejects the doctrine of judicial estoppel, but does allow the consideration of prior sworn statements by the parties as a material factor.

*Blanton v. Inco Alloys International, Inc.,* 123 F.3d 916 (6th Cir.1997).

The Sixth Circuit, however, did not alter its previous ruling that Blanton was unable to perform his previous position as a matter of law and affirmed the district court's grant of summary judgment to the defendant as to this claim. The plaintiff argued in the alternative that even if he could no longer perform his old job, Inco should have considered transferring him to any available lighter-duty position as a reasonable accommodation. *Blanton,* 108 F.3d at 109. On this issue, the Sixth Circuit noted that when Blanton sought to return to work, Inco informed him that he could either be terminated or apply for disability benefits. *Id.* "Under those circumstances, Blanton's 'application for disability benefits in this case may not have constituted the broad admission of incapacity' as the district court indicated." *Id.* (citing *D'Aprile v. Fleet Services Corp.,* 92 F.3d 1 (1st Cir. 1996)) (if an employer refuses an accommodation that would allow an employee to perform his job, the employee's subsequent claim of total disability for purposes of obtaining disability benefits does not constitute an admission). The court also noted that Blanton's previous position before the SSA had not been successful. *Id.* at 110. Thus, he should not have been estopped from claiming that he was capable of performing other jobs. *Id.*

On petition for rehearing, the defendant contended that previous Sixth Circuit precedent required summary judgment on the plaintiff's claim that he could perform with accommodation or be transferred to other jobs. *Blanton,* 123 F.3d at 916 (referring to *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173 (6th Cir.1996) and *Hankins v. The Gap, Inc.,* 84 F.3d 797 (6th Cir.1996)). The Sixth Circuit disagreed stating that,

Although *Monette* does require that 'the disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable,' Blanton argues that he did meet this burden at least at the summary judgment stage here. Blanton points to evidence in the record that he sought to come back to work and that he was told there was nothing for him. He presented sufficient evidence to raise a genuine issue of material fact under *Monette* and *Hankins.*

*Blanton,* 123 F.3d at 916.

In the present case, plaintiff claims that he is a "qualified individual with a disability as defined by the ADA, 42 U.S.C. § 12111(8), in that he is or was able to perform the essential functions of the job which he held or which he now desires, with or without a reasonable accommodation." [Doc. No. 9, para. 3]. This contention is somewhat contrary to plaintiffs position before the SSA wherein he claimed that he was unable to perform his previous work at Scruggs because of "double vision" and "balance problems". It must be noted, however, that plaintiff has been unsuccessful in his recent attempts to secure the continuance of his social security disability benefits. Thus, the doctrine of judicial estoppel cannot be applied to preclude plaintiff from asserting a different position in these proceedings. Nevertheless, plaintiff's admissions or statements to the SSA are material factors and will be given controlling weight by this court at the summary judgment stage. *See Swanks v. Washington Metropolitan Area Transit Authority,* 116 F.3d 582, 587 (D.C.Cir.1997) (citing *Pyramid Securities Limited v. IB Resolution, Inc.,* 924 F.2d 1114, 1123 (D.C.Cir. 1991)) (parties' prior sworn statements must be given "controlling weight" at summary judgment unless "the shifting party can offer persuasive reasons for believing the supposed correction"). Plaintiff has offered no reasons for believing the contrary assertions in his complaint or in answers to interrogatories propounded by the defendant. Moreover, allowing plaintiff to assert a contrary position in these proceedings may serve to undermine the integrity of this court by encouraging "chameleonic litigants." Hence,

this court finds that plaintiff is unable to perform his previous position at Scruggs without accommodation as a matter of law and defendant will be granted summary judgment on this claim.

While plaintiff indicated on forms provided by the SSA that he was unable to perform his previous work because of double vision and balance problems, he made no statements or admissions as to whether he could perform his past work or other work with accommodation. Likewise, SSA disability determinations take no account of reasonable accommodation. *See, Swanks,* 116 F.3d at 586. It must be noted that SSA determined that plaintiff retained the capacity to perform "semiskilled and unskilled work performed in a hazard-free environment". [Doc. No. 15, Exhibit I]. The plaintiff has produced evidence that he sought to return to work and that he was told that there was nothing for him. Plaintiff has, therefore, presented sufficient evidence to create genuine issues of material fact with regard to whether he could have performed his previous position with accommodation; whether he could have performed other positions at Scruggs; and whether Scruggs provided reasonable accommodation through a reassignment to a vacant position or by reassigning some of the functions of his previous position. For these reasons, defendant's motion for summary judgment will be denied as to these claims. Additionally, defendant's motion to stay discovery [Doc. No. 16] is denied.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that defendant's motion to stay discovery [Doc. No. 16] is DENIED. It is further ORDERED that defendant's motion for summary judgment [Doc. No. 14] is GRANTED IN PART and DENIED IN PART. Plaintiff having presented sufficient evidence to create genuine issues of material fact with regard to whether he could have performed his previous position with accommodation, whether he could have performed other positions with

defendant, and whether defendant provided reasonable accommodation, defendant's motion as to these claims is DENIED. With regard to plaintiff's claim that he could have performed the essential functions of his previous position at Scruggs without accommodation, defendant's motion is GRANTED.