**William J. BLANTON, Plaintiff–Appellant,**

v.

**INCO ALLOYS INTERNATIONAL, INC., Defendant–Appellee.**

No. 00–5335.

United States Court of Appeals, Sixth Circuit.

May 16, 2001.

Before MARTIN, Chief Judge, WELLFORD and MOORE, Circuit Judges.

WELLFORD, Circuit Judge.

For the third time, we consider this controversy between William J. Blanton ("Blanton") and his former employer, Inco Alloys International, Inc. ("Inco"), arising out of Blanton's allegedly unlawful termination. Many of the pertinent facts in this action have been set out in our prior decisions. *See Blanton*, 108 F.3d 104

(1997); *Blanton,* 123 F.3d 916 (1997) (a supplemental per curiam decision); and *Blanton,* No. 99–0517 (6th Cir. Oct. 25, 1999) (denying leave to appeal and separate concurring opinion). In this opinion, we AFFIRM the district court's grant of summary judgment in favor of Inco.

Blanton worked for Inco as an extrusion press crew leader until he injured his back in an on-the-job accident. Blanton's doctors restricted him from heavy lifting and all squatting as a result of that accident. They also prescribed heavy medication that contraindicated work with heavy machinery. These medical restrictions and Blanton's physical limitations rendered him unable to perform his former position as extrusion press crew leader.

When Blanton's physicians eventually approved his return to light duty work, Blanton met with Inco's operations manager and his union grievance representative to discuss his options. Considering Blanton's limitations, Inco informed Blanton that he would be unable to perform any job at Inco, particularly his former job. At that time, Blanton was given the choice either to be terminated or to apply for disability retirement benefits.

As a result of Inco's failure to allow him to return to work, Blanton sued Inco in Kentucky state court pursuant to KY. REV. STAT. §§ 344, *et seq.* (Kentucky's disability statutes), claiming that Inco unlawfully terminated him based on his disability.[1] The defendant removed the case to federal court based on diversity jurisdiction. In 1995, the district court granted summary judgment in favor of Inco, finding that (1) Blanton was disabled within the meaning of the Kentucky Act, (2) Blanton was not qualified to continue his for-

mer position of extrusion press crew leader, which he continued to seek after a disability leave, and (3) Blanton failed to prove that Inco denied him reasonable accommodations. In sum, the district court concluded that: "Plaintiff has failed to demonstrate that he was qualified to perform the essential functions of his job," and that he could not "identify any reasonable accommodation that would have enabled him to perform these essential functions."

Blanton then filed his first appeal to this court. In our initial opinion, we affirmed the district court in part, stating that "[i]n light of the overwhelming weight of the medical evidence, as well as Blanton's own admissions, we find that Blanton was unable to perform his former position of extrusion press crew leader as a matter of law." *Blanton,* 108 F.3d at 109. We further held, however, that the district court did not address adequately Blanton's claim that Inco failed to provide him a reasonable accommodation through a reassignment to a vacant position. We remanded that issue, explaining:

> It is unclear from the record whether Blanton made a specific request to Inco for any *other* work besides his former job, or whether Inco offered him any other work.
>
> . . .
>
> We conclude that the district court did not adequately address Blanton's claim that Inco failed to provide reasonable accommodation through a reassignment to a vacant position. See Ky.Rev.Stat. 344.030(6). Viewing the evidence in a light most favorable to Blanton in this regard, we believe that summary judgment was inappropriate because there

---

1. The Kentucky statutes mirror the Americans With Disabilities Act ("ADA"), and therefore ADA case law is instructive on the subject of whether Inco has satisfied its obligations un-

der the Kentucky statutes. *See Henderson v. Ardco, Inc.,* 247 F.3d 645, 649 (6th Cir.2001); *Brohm v. JH Properties, Inc.,* 149 F.3d 517, 520 (6th Cir.1998).

exists a genuine issue of material fact as to whether Inco satisfied its obligation to accommodate Blanton by allowing him the opportunity to be transferred to another position, if he was capable of performing in that position.

*Id.* at 110.

In a supplemental opinion, we noted that Blanton bore the burden on remand of "proposing an accommodation and showing that *that* accommodation is objective[ly] reasonable." *Blanton,* 123 F.3d at 917 (quoting *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173 (6th Cir.1996)). We reiterated that the district court, on remand, was to consider "whether Inco failed to reasonably accommodate Blanton by not considering him *for transfer to a vacant position." Id.* (emphasis added).

During the course of the remand, Inco sought leave to appeal two legal questions certified under 28 U.S.C. § 1292(b). We rejected the interlocutory appeal petitions. This judge, however, issued a separate opinion concurring in the decision to deny Inco an interlocutory appeal, indicating that certain factual determinations needed to be made by the district court: "Did Blanton request another position? Was another position then vacant and available? Was Blanton 'qualified' to handle and perform that question? If Blanton requested no different position from his former job, was Inco obligated to seek out a position to accommodate his physical limitation?"

In February, 2000, after further discovery had been conducted specifically pertaining to the subject of the remand, the district court entered a memorandum opinion concluding that "as a matter of law. Blanton was not a 'qualified individual' protected by Kentucky's disability discrimination laws." Therefore, the district court again granted summary judgment in favor of Inco. Blanton now appeals from that final decision.

The district court made the following findings of fact upon remand:

Blanton never requested anything other than a return to his former extrusion press crew leader position. He now claims, however, that Inco should have transferred him or encouraged him to bid or bump into another position as a reasonable accommodation. Inco, in response, says it considered every position at its facility but found none that Plaintiff could perform within his medical restrictions. For that reason, Inco says a transfer was not an option. Furthermore, Inco claims it had no duty to recommend to Plaintiff that he exercise his bidding or bumping rights because, aside from the fact it had no positions Plaintiff could perform, this was an option that Blanton already knew of but failed to request.

There is no evidence that Blanton could perform any of these [vacant] jobs within his medical restrictions or physical limitations. Plaintiff complained that he could not bend, squat or reach because of the pain in his back. Furthermore, there is evidence that Plaintiff was taking heavy medication on a daily basis which contraindicated work with heavy equipment. The job descriptions provided for the 5 available positions included manual labor and the operation of motorized equipment. Defendant's vocational expert, Dr. Anthony Gamboa, confirmed that all of the vacant positions and indeed, every position at the Kentucky Inco plan, involve strenuous, frequent physical exertion as well as the operation of heavy machinery—none of which conforms to Plaintiff's limitation to basically sedentary work.... Dr. Collins indicated in a letter dated February 23, 1993, that Blanton was "permanently and totally disabled from working in the industrial environment of his specific

former occupation." Similar letters from Dr. James Powell, another treating physician, and Dr. Jose Riccard, who evaluated Plaintiff, concurred that Blanton was unsuitable for work in an industrial setting. Aside from the medical evidence, Craig Dickson, Inco's operation manager said he considered every job at the plant in conjunction with Plaintiff's medical restrictions at the time Blanton requested to return but found nothing that fit Blanton's limitations. Union Grievance Committee Chairman, Archie Perry, agreed with Dickson's decision.

. . .

Plaintiff could have asked his expert to revisit the plant and refine his opinions when the Court reopened discovery on the transfer issue after the remand. Further development would clearly have benefitted both sides at trial. It was also something Plaintiff knew the Defendant would do as the Defendant had requested additional discovery time for this very purpose. Plaintiff chose instead to rely on the scant evidence already in the record and his belief that summary disposition was foreclosed.

. . .

There is, of course, some evidence that Plaintiff can perform some sort of light duty work in society. The record discloses absolutely no evidence that Plaintiff can safely perform the essential functions of any position at the Inco plant, let alone those that were vacant or otherwise available to Plaintiff at the limited time in question. Kentucky law simply does not require the placement of a disabled worker in a job where he poses a hazard to himself or others as a form of reasonable accommodation.

Blanton's primary argument on appeal is that there still remain material issues of fact that preclude summary judgment. We are not persuaded. First, although Blanton was not estopped from pursuing his claim by reason of his representations of total disability to the Workers' Compensation Commission and the Social Security Administration, what he related about his inability to work at the pertinent time was an important factor in the grant of summary judgment.[2] See Blanton, 123 F.3d at 917 (holding that previous sworn statements made by a plaintiff in his request for disability benefits is a material factor for the court to consider in determining whether he is entitled to ADA relief).

Blanton had been a long-time faithful, valuable employee. Contrary to intimations of his attorney at oral argument, there is nothing in the record to support the notion that Inco wished to let him go. Inco may be deemed to have desired this type of employee to continue working if he were able to do so. The union representatives took no contrary position with respect to Blanton's ability to perform other vacant or available jobs.

Blanton himself pursued no grievance concerning the termination, and he sought no other position under the collective bargaining agreement. We consider this to be a pertinent factor in rejecting the discrimination claim based upon reasonable accommodation considerations. Furthermore, though Blanton claims that he and his representatives were somehow prevented or "cut off" from requesting another position at the plant, the fact that the parties engaged in ongoing meetings and discussions pertaining to Blanton's employment belies such an assertion.

Blanton claims that Inco erroneously denied him the opportunity to work in a

2. Blanton stated not long after his termination: "I am still disabled.... I can't bend and I can't squat. I can't reach. I am in so much pain...."

"light duty" position based on the uninformed assumption that Blanton would continue taking his prescription pain medication upon his return to work. Rather, Blanton claims, he could have offered to discontinue medicines while at work in order to perform the duties of another position at the plant. Inco, on the other hand, claims that Blanton has offered no evidence that he would be able to discontinue his pain medications, which undisputedly are contraindicated with working with machinery at the plant. In 1992, Blanton claimed a pain rating of ten out of a "maximal" ten rating scale. In June of 1993, Blanton listed five pain and other medications he was taking on a daily basis (or "when needed" in the case of darvocet): paxil, norflex, relafon, zorco, and procardia. Inco had serious concerns about the health and safety of Blanton and other Inco employees if Blanton attempted to work in any of the vacant positions at the plant while taking those medications. The testimony of Blanton's doctors indicated that the pain would not get better over time. Blanton has simply offered no material evidence to contradict the evidence submitted by Inco.

Blanton admitted that he sought no other position than continuing in his old position, a job he was incapable of performing. He presents no evidence of animus against him because of his disability. It may be that Blanton can perform light duty work for another employer, but that does not preclude summary judgment in favor of Inco under the circumstances of this case.

We have reexamined the record carefully in the course of our review of the district court's findings and conclusions upon remand. We are satisfied that under appropriate summary judgment standards that the district court has not been demonstrated to have committed error in granting summary judgment to Inco.

Accordingly, we AFFIRM judgment for defendant Inco.