**Clyde N. GRIFFITH, Plaintiff–Appellant,**

v.

**WAL–MART STORES, INC., Defendant–Appellee.**

No. 96–6361.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 30, 1997.

Decided Jan. 29, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied March 11, 1998.

Lee Hornberger (argued & briefed), Cincinnati, OH, for Plaintiff–Appellant.

Michael A. Luvisi (argued), Elizabeth U. Mendel and Kathryn A. Quesenberry (briefed), Woodward, Hobson & Fulton, Louisville, KY, Katherine M. Coleman, Sturgill, Turner, Baker & Maloney, Lexington, KY, for Defendant–Appellee.

Paul Bogas (briefed), Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, for Amicus Curiae.

Before: RYAN and BATCHELDER, Circuit Judges; CAMPBELL, District Judge.*

## OPINION

CAMPBELL, District Judge.

Plaintiff appeals the district court's grant of summary judgment in favor of Defendant on Plaintiff's claim that Defendant violated the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"). Specifically, the district court held that Plaintiff was precluded from showing he was a "qualified

---

* The Honorable Todd J. Campbell, United States District Judge for the Middle District of Tennes- see, sitting by designation.

individual with a disability" under the ADA because Plaintiff previously made certain representations regarding his disability in an application for Social Security disability benefits. For the reasons discussed below, we REVERSE the judgment of the district court.

## I.

Plaintiff Clyde Griffith, a former employee of Defendant Wal–Mart Stores, Inc., brought this action alleging that Wal–Mart discriminated against him by discharging him because of his disability, in violation of the ADA and the Kentucky Equal Opportunities Act, Ky.Rev.Stat. Ann. §§ 207.130, *et seq.* Plaintiff also brought state law claims of promissory estoppel, and fraud and deceit.

Plaintiff began working in a Wal–Mart store in Florence, Kentucky on October 3, 1990. In his Wal–Mart employment application, Plaintiff revealed that he had injured his back in 1984 and had undergone back surgery in 1985 and 1986. As a result of the 1984 injury, Plaintiff resigned from the City of Covington Police Department, and was awarded workers' compensation benefits. Plaintiff applied to work at Wal–Mart six years later when his doctor lifted his "no work" restriction.

Plaintiff's first assignment at Wal–Mart was a sales associate position in the Sporting Goods Department. Three to four months later, after Plaintiff complained to management that the heavy lifting in the Sporting Goods Department caused him back pain, Wal–Mart transferred Plaintiff to the Hardware Department. While in the Hardware Department, Wal–Mart accommodated the various physical restrictions placed on the Plaintiff by his doctor. According to Wal–Mart, Plaintiff was able to perform the essential functions of his job in the Hardware Department.

During November, 1991, the store manager ordered Plaintiff to move certain heavy items, and Plaintiff reinjured his back.[1] Pursuant to the orders of his doctor, Plaintiff missed a couple months of work over the next six months. Upon his return to work, Plaintiff was subject to restrictions on heavy lifting and long periods of standing. Wal–Mart accommodated those restrictions in the Hardware Department.

In September, 1992, Wal–Mart transferred Plaintiff back to the Sporting Goods Department. On October 26, 1992, Wal–Mart discharged Plaintiff for failing to report to work and lack of dependability. Plaintiff contends he was given permission to be absent from work during this time to take care of car trouble.

Plaintiff subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Wal–Mart discriminated against him because of his disability by firing him due to his back problems. The EEOC issued a "right to sue" letter in April, 1993.

During the next four months, Plaintiff received unemployment benefits while unsuccessfully seeking various jobs. In April, 1993, Plaintiff applied for disability insurance benefits from the Social Security Administration ("SSA") based on his back ailment. It is the statements made by the Plaintiff in the SSA application forms that led the district court to reject Plaintiff's ADA claim.

The district court noted the following statements made by the Plaintiff in his application for benefits:

> ... I became unable to work because of my disabling condition on October 29, 1992. I am still disabled.

> ... I have not been able to work since I was let go by Wal–Mart in [sic] October 29, 1992.[2]

> * * * * * *

> I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law by fine,

---

1. Plaintiff filed a workers' compensation claim as a result of this injury, which the parties subsequently settled.

2. Wal–Mart terminated Plaintiff on October 26, 1992. The district court assumed that Plaintiff used this later date in his application by mistake.

imprisonment or both. I affirm that all information I have given in connection with this claim is true.

*Griffith v. Wal–Mart Stores, Inc.,* 930 F.Supp. 1167, 1168–69 (E.D.Ky.1996). These typewritten statements, along with several others, are included in a form generated by the SSA, which is signed by Plaintiff.

The district court also noted that in the accompanying Disability Report, the Plaintiff was asked when his disabling condition first bothered him, and Plaintiff answered: "November 21, 1991," and explained that he reinjured his back on that day while working at Wal–Mart. Plaintiff was also asked when his condition finally made him stop working, and he answered: "October 29, 1992." 930 F.Supp. at 1169.

The district court also noted that in the "Activities Of Daily Living" questionnaire, completed by the Plaintiff four months later, on August 26, 1993, in answer to various questions, Plaintiff described the limitations caused by his back problem, as follows:

I can only stand for about ten minutes at a time. My back is getting worst [sic].

\* \* \* \* \* \*

From 1985 to the present I need help to get out of the [bath] tub and sometime to get help to get off the couch.

\* \* \* \* \* \*

Since 1985 to the present, I can't do any odd jobs.

\* \* \* \* \* \*

[F]rom 1985 to the present I can't [do grocery shopping].

*Id.* Plaintiff also stated that the only household chore he could perform was folding clothes. *Id.*

In a subsequent statement filed with the SSA on November 5, 1993, Plaintiff stated: "My back pain keeps from doing any activities. It is very hard to take care of myself." *Id.*

Although the Plaintiff was initially denied SSA benefits, an Administrative Law Judge issued a decision on July 22, 1994, without holding a hearing, that Plaintiff was entitled to disability benefits retroactive to October 29, 1992. In reaching his decision, the ALJ stated:

The claimant worked in the past as an autobody repairman, maintenance person, retail sales clerk, and reserve police officer. All of his past relevant jobs required an ability to perform at least light exertion on a sustained basis. Because of his limitation to significantly less than a full range of sedentary work, he has been unable to engage in past relevant work since October 29, 1992.

\* \* \* \* \* \*

Essentially his residual functional capacity precludes all work activity on a full-time basis. Considering the claimant's age, education, previous work experience, and residual functional capacity, [the SSA regulation] establishes that the claimant is disabled.

\* \* \* \* \* \*

The claimant has been disabled, as defined in the Social Security Act, since October 29, 1992.

*Id.*

Following what it considered to be the majority view, the district court held that an individual is precluded from showing that he is capable of performing the essential functions of his job for purposes of an ADA claim, if that person has represented that he is disabled in order to obtain long term disability benefits.[3] 930 F.Supp. at 1170–71.

Applying that view in this case, the district court held "the inconsistencies between [Wal–Mart's Sales Associate] job requirements and Plaintiff's representations about his disability preclude Plaintiff from raising an issue of fact as to whether, on the date he was terminated by Wal–Mart, he was a qualified individual under the ADA." 930 F.Supp. at 1173.

---

**3.** Among the cases cited by the district court are *Reigel v. Kaiser Foundation Health Plan N.C.,* 859 F.Supp. 963 (E.D.N.C.1994); *Simo v. Home* *Health and Hospice Care,* 906 F.Supp. 714 (D.N.H.1995). *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 555 n. 4 (D.Kan.1995).

## II.

We review the district court's grant of summary judgment de novo. *Birgel v. Board of Comm'rs of Butler Co., Ohio,* 125 F.3d 948, 950 (6th Cir.1997). Accordingly, we view the evidence and the record in the light most favorable to the Plaintiff to determine whether a genuine issue of material fact exists. *Id.;* Fed.R.Civ.P. 56(c). Summary judgment was appropriately granted to the Defendant if the evidence shows there is no genuine issue of material fact and that the Defendant is entitled to judgment as a matter of law. *Id.*

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual" with regard to hiring, compensation, discharge, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Reasonable accommodation may include job restructuring, part-time or modified work schedules and reassignment to vacant positions. 42 U.S.C. § 12111(9). The relevant time for determining whether the plaintiff is a "qualified individual with a disability" is at the time of discharge. *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 884 (6th Cir.1996).

By contrast, the Social Security Administration does not consider whether an individual is able to work with reasonable accommodation in determining entitlement to disability benefits. A person is disabled under the Social Security Act:

... if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.

Although the district court ruled that Plaintiff's ADA claim was "precluded" by virtue of the statements Plaintiff made in his SSA application, it did not specify the theory by which it reached this conclusion. As the district court noted, some courts have reached this conclusion based on the doctrine of judicial estoppel. The doctrine of judicial estoppel "forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" *Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.,* 911 F.2d 1214, 1217 (6th Cir.1990). Courts apply judicial estoppel in order to "preserve[ ] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment." *Teledyne,* 911 F.2d at 1218. The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court. *Id.*

Although the federal courts have divergent opinions on the issue[4], the most recent deci-

---

4. In a 1996 decision, the Third Circuit held that a plaintiff who made representations of disability in a disability benefit application was judicially estopped from recovering on an ADA claim. *McNemar v. The Disney Store, Inc.,* 91 F.3d 610 (3rd Cir.1996). In a more recent decision, however, the court suggested that *McNemar* should not be applied as a per se rule: "Courts should not assume that McNemar always bars an indi-

vidual's ADA claims merely because prior representations or determinations of disability exist in the record." *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503 n. 5 (3rd Cir.1997).

The Second Circuit has held that an employee's statements to the Social Security Administration that he was "unable to work" judicially estopped him from claiming he was qualified

sion of this court on the issue holds that the doctrine of judicial estoppel does not operate to preclude ADA relief to an individual based on that individual's application for and/or receipt of social security disability benefits. In *Blanton v. Inco Alloys Inter., Inc.*, 108 F.3d 104, 108–09 (6th Cir.1997), a panel of this court, like the district court in this case, held that plaintiff's admission in his application for Social Security disability benefits that he was unable to perform his job prevented him from claiming in his subsequent state law disability discrimination suit that he was able to perform the essential functions of his job.

After the *Blanton* opinion was issued, the District of Columbia Circuit issued an opinion rejecting the judicial estoppel theory. In *Swanks v. Washington Metro. Area Transit Auth.*, 116 F.3d 582 (D.C.Cir.1997), the court reversed the district court's grant of summary judgment for the employer holding that plaintiff's application for and receipt of Social Security disability benefits barred ADA relief. In reaching its decision, the court pointed out that a finding of disability under the Social Security Act gives no consideration to a claimant's ability to work with reasonable accommodation, which is required to be considered under the ADA:

> The contrary view—that Social Security disability benefits preclude ADA relief— would force disabled individuals into an 'untenable' choice between receiving immediate subsistence benefits under the Social Security Act or pursuing discrimination remedies.... Forcing such a choice would undermine the pro-employment and

anti-discrimination purposes of the two statutes.... Nothing in either statute requires disabled individuals to make this choice.

*Swanks*, 116 F.3d at 586.

The *Swanks* Court noted that individual statements in an application for disability benefits could well be relevant in an ADA lawsuit, but explained that the record in that case contained no evidence of Swanks' statements to the Social Security Administration. 116 F.3d at 587.

After the *Swanks* opinion was issued, the parties in *Blanton* sought a rehearing. As a result, the panel issued a supplemental opinion which stated:

> The panel's opinion should not be read to endorse judicial estoppel in this context. We simply held that '[i]n light of the overwhelming weight of the medical evidence, as well as Blanton's own admissions, we find that Blanton was unable to perform his former position of extrusion press crew leader as a matter of law.' We agree with the D.C. Circuit's opinion in *Swanks v. Washington Metro. Area Trans. Auth.*, 116 F.3d 582 (D.C.Cir.1997), that holds that the receipt of disability benefits does not preclude subsequent ADA relief and rejects the doctrine of judicial estoppel, but does allow the consideration of prior sworn statements by the parties as a material factor.

*Blanton v. Inco Alloys Inter. Inc.*, 123 F.3d 916, 917 (6th Cir.1997)("*Blanton II* ").

under the ADA. *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d Cir.1997).

The Fifth Circuit has held that an application for or receipt of social security disability benefits "creates a rebuttable presumption that the claimant or recipient of such benefits is judicially estopped from asserting that he is a 'qualified individual with a disability.'" *Cleveland v. Policy Mgt. Sys. Corp.*, 120 F.3d 513, 518 (5th Cir. 1997).

The Eleventh Circuit does not apply a per se rule of judicial estoppel, but does hold that a plaintiff:

> ... is estopped from denying the truth of any statements made in her disability application. Our basis for this holding is that an ADA plaintiff should not be permitted to disavow any statements she made in order to obtain SSD benefits.

*Talavera v. School Bd. of Palm Beach Co.*, 129 F.3d 1214, 1220 (11th Cir.1997).

The issue remains open in the Eighth Circuit. *See Robinson v. Neodata Services, Inc.*, 94 F.3d 499, 502 n. 2 (8th Cir.1996)("Social Security determinations, however, are not synonymous with a determination of whether a plaintiff is a 'qualified person' for purposes of the ADA."); *Budd v. ADT Sec. Sys.*, 103 F.3d 699, 700 (8th Cir.1996)(per curiam)(court affirmed district court's opinion based on estoppel theory, and alternatively, determined plaintiff's evidence was insufficient to withstand summary judgment); *Dush v. Appleton Electric Co.*, 124 F.3d 957, 962 n. 8 (8th Cir.1997)(estoppel issue "remains open in our Circuit.")

An individual's application for and receipt of Social Security disability benefits, as the *Swanks* Court points out, gives no consideration to that person's ability to work with reasonable accommodation, which is required to be considered under the ADA. Furthermore, we note that the Social Security Act and implementing regulations establish certain work incentive programs for individuals receiving disability benefits. For example, beneficiaries may engage in a trial work period that allows them to work for nine months while their benefit levels remain unchanged. 42 U.S.C. § 422(c); 20 C.F.R. § 404.1592(a). Obviously, the definition of "disability" under the Social Security Act does not require a finding that the individual cannot perform any job under any circumstances.

■ Under *Blanton II*, statements made in an application for Social Security disability benefits, while relevant, do not result in judicial estoppel.

First, judicial estoppel does not apply because the answers given in a Social Security disability benefit application are not necessarily inconsistent with a plaintiff's claim that he could have worked at his job, during the relevant period, with a reasonable accommodation. The precise question of whether the applicant could have worked with a reasonable accommodation during the relevant period is not asked in a Social Security context because, as discussed above, it would not necessarily bar receipt of those benefits.

Furthermore, the statements made in the SSA application and forms are open to interpretation. In determining precisely what the plaintiff "admitted" in the application, one must consider the context in which the statements were made. Portions of the SSA application and other forms require the applicant merely to check off boxes without comment, or require the applicant to fill in blanks with little room given for elaboration. In short, the employee may not have a fair opportunity to accurately explain the details of the employee's medical condition and his ability or inability to work for purposes of the ADA.

■ Moreover, judicial estoppel is an equitable doctrine, and "is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne*, 911 F.2d at 1218 (footnote omitted). Applying judicial estoppel under the circumstances presented here would be inappropriate given that the truth-seeking function of the court would be supplanted by an agency administrative decision rendered without an evidentiary hearing. For these reasons, the district court's decision cannot be sustained based on the doctrine of judicial estoppel.

Nor can the district court's decision be supported by a theory of "binding admissions." In reaching its decision, the district court cited the First Circuit's decision in *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580–84 (1st Cir.1992), and indicated that the court precluded ADA relief in similar circumstances by treating the plaintiff's prior representations as "binding admissions." In *August*, the plaintiff had made representations in applying for his employer's disability benefits that he was totally disabled and did not know when he could return to work. 981 F.2d at 579. The employer later discharged the plaintiff because he would not specify when he would be able to return to work. *Id.* In granting summary judgment to the defendant on plaintiff's state law disability discrimination claim, the First Circuit held that plaintiff had presented no evidence indicating that he was able to perform his job with reasonable accommodation at the time in question. 981 F.2d at 580–83.

■ In reaching its decision, the *August* Court did not create a new theory of "super admissions" whereby prior representations in disability benefit applications are considered to outweigh all other contrary evidence in the record. Instead, the court held that there was no other evidence in the record to the contrary. Thus, the court simply applied well-established principles of summary judgment in rejecting plaintiff's claim. *See D'Aprile v. Fleet Services Corp.*, 92 F.3d 1, 4–5 (1st Cir.1996)(distinguishes prior decision in *August*, and holds that genuine fact issue exists as to disability discrimination claim despite plaintiff's prior application for dis-

ability insurance benefits; and states that *August* "simply stands for the proposition that the plaintiff's ability to work with reasonable accommodation is an element of a handicap employment discrimination case under Massachusetts law.")[5]

We believe these prior statements should not be the subject of judicial estoppel or a theory of "super admissions," but rather should be analyzed under traditional summary judgment principles. Straightforward summary judgment analysis, rather than theories of estoppel or "super admissions," has also been applied to similar fact situations by other circuits. *Dush v. Appleton Electric Co.*, 124 F.3d at 963–65 (court decides case on summary judgment grounds, leaving open the question of whether judicial estoppel should be applied in this context); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1480–81 n. 3 (9th Cir.1996) (court found application of judicial estoppel unnecessary because plaintiff did not produce sufficient evidence to withstand summary judgment). *But see Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 605–06 (9th Cir.1996) (plaintiff in age discrimination action estopped from claiming she was performing her job well when she had previously obtained a favorable workers' compensation settlement).

 The Seventh Circuit has outlined this approach as follows:

The point here is a simple one: When employees (and/or their physicians) represent that they are 'totally disabled,' 'wholly unable to work,' or some other variant to the same effect, employers and factfinders are entitled to take them at their word; and, such representations are relevant evidence of the extent of a plaintiff's disability, upon which an employer may rely in attempting to establish that an ADA plaintiff is not a 'qualified individual with a disability.' At the same time, because the SSA's definition of disability—as well as those of most disability insurance plans—differs materially from the ADA's definition of a 'qualified individual with a disability,' these representations are not conclusive as to the ADA issue. When a defendant in an ADA action relies on such representations as the basis for contending that a plaintiff is not a 'qualified individual,' the plaintiff is free to come forward with additional evidence that shows she could perform the essential duties of a desired position with or without reasonable accommodation notwithstanding the fact that she might have been deemed disabled under some other statutory or contractual framework.... As a general matter ... absent some such affirmative showing ... the employer will be entitled to judgment as a matter of law.

*Weigel v. Target Stores*, 122 F.3d 461, 467–68 (7th Cir.1997)(footnote omitted).

### IV.

 Applying this approach to the facts presented here, the court finds that summary judgment was improperly granted to Defendant because there are genuine issues of material facts on the issue of whether Plaintiff was capable of performing the essential functions of his job at Wal–Mart with a reasonable accommodation at the time in question. Plaintiff offered proof that he had performed the sales associate job for approximately two years and had received favorable evaluations. In addition, Defendant admits that Plaintiff was able to perform the sales associate function in the Hardware Department, and that it was able to accommodate Plaintiff's physical restrictions.[6] Indeed, De-

---

**5.** The district court's decision also cannot be supported through application of issue preclusion or equitable estoppel. Issue preclusion precludes relitigation of the same issue that was raised and actually litigated in a prior suit. *Aircraft Braking Systems Corp. v. Local 856, Inter. Union, United Automobile, Aerospace and Agricultural Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir.1996). As discussed above, the issue of whether Plaintiff could have worked with a reasonable accommodation at the time in question

was not decided by the ALJ in the Social Security proceeding.

Equitable estoppel requires that the party claiming estoppel show he relied to his detriment on the opposing party's position in a prior proceeding. *Teledyne*, 911 F.2d at 1220. Defendant has not made this showing.

**6.** This evidence conflicts with Defendant's contention that the essential functions of the sales associate position should be determined by the job description in the employee handbook, which

fendant's store manager testified that Plaintiff had no job performance problems while in the Hardware Department.

Plaintiff contends that his prior statements in his application for disability benefits do not contradict this proof. In the application, Plaintiff stated he was unable to work because "no employer will hire me because of my condition and restrictions." Plaintiff argues that this statement is not inconsistent with his position that he could have, and actually had, worked at his former job with reasonable accommodation. In addition, Plaintiff contends that the statements in "Daily Living Report" are not inconsistent with his position because they relate to Plaintiff's non-work activities and were made some ten months after Plaintiff was discharged, a time when Plaintiff contends his condition had worsened. Similarly, Plaintiff argues that his statement in his request for hearing that his back pain kept him from engaging in any activities was made over a year after he was terminated, at a time when his condition had worsened and he was severely depressed.

Although a jury may ultimately decide that the Plaintiff's explanation of his prior statements is not credible, Plaintiff has presented sufficient proof to establish a genuine issue of material fact as to whether he was a "qualified individual with a disability." Accordingly, the district court erred in granting summary judgment to the Defendant.

### V.

Plaintiff also appeals the district court's dismissal of his state law claims. After granting summary judgment to the Defendant on the ADA claim, the district court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims. In ruling on the parties' motions to reconsider its judgment, the district court concluded that Plaintiff had not sufficiently alleged the existence of diversity jurisdiction.

We find it unnecessary to reach this issue given the reinstatement of Plaintiff's ADA claim. The ADA claim, of course, confers

states that the tasks a sales associate must perform include: frequently lifting objects weighing

federal question jurisdiction on the district court. 28 U.S.C. § 1331. Under these circumstances, Plaintiff's state law claims are remanded to the district court to determine whether the district court should exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### VI.

The court concludes that the district court erred in awarding summary judgment to Defendant on Plaintiff's ADA claim, and REVERSES that judgment. The court REMANDS the Plaintiff's state law claims to the district court to determine whether the district court should exercise·supplemental jurisdiction over the state law claims.

at least 25 lbs. and regularly walking or standing.