ELECTRONIC CITATION:  2000 FED App. 0008P (6th Cir.)
File Name:  00b0008p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  TROUTMAN ENTERPRISES, INC., )
)
Debtor. )
_____ )
)
DONALD F. HARKER, III, )
)
Plaintiff-Appellee, )
)
v. )    No. 00-8014
)
RUFUS TROUTMAN, ET AL., )
)
Defendants-Appellants. )
_____ )

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Dayton.
No. 92-01988, Adv. No. 99-3099.

Argued: July 19, 2000

Decided and Filed:  September 26, 2000

Before: MORGENSTERN-CLARREN, RHODES, and STOSBERG,
Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Tim J. Robinson, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellants.  Ira Rubin, GOLDMAN, RUBIN & SHAPIOR, Dayton, Ohio, for Appellee.  **ON BRIEF:**  Tim J. Robinson, William A. Sherman, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellants. Ira Rubin, GOLDMAN, RUBIN & SHAPIOR, Dayton, Ohio, for Appellee.

---

**OPINION**

---

STEVEN W. RHODES, Chief Bankruptcy Appellate Panel Judge. This case presents complex issues involving the property of a bankruptcy estate that has been converted postconfirmation from Chapter 11 to Chapter 7.[1] In its Chapter 11 bankruptcy, the Debtor failed to disclose its ownership interest in a life insurance policy. After its plan was confirmed, the Debtor's case was converted to Chapter 7. In a turnover proceeding filed by the Trustee seeking the proceeds of the policy, the bankruptcy court granted summary judgment to the Trustee. This appeal from that order was filed by individuals who call themselves "the Surviving Shareholders," asserting that they are the sole remaining shareholders of the Debtor. The Chapter 7 trustee challenges the Surviving Shareholders' standing to bring this appeal.

The Panel holds that the Surviving Shareholders do have standing because as shareholders of the reorganized debtor they may have some interest in the proceeds of the policy. The Panel also holds that all of the property of the original Chapter 11 bankruptcy estate, including the undisclosed policy, vested with the reorganized debtor upon confirmation of the Chapter 11 plan. The Bankruptcy Code does not provide that property that has vested with the reorganized debtor is recaptured into the bankruptcy estate upon a postconfirmation conversion to Chapter 7. Finally, the Panel concludes that the doctrine of judicial estoppel does not apply in the circumstances of this case. For these reasons, the bankruptcy court order requiring turnover of the proceeds to the Chapter 7 trustee is reversed.

---

[1] A companion case, *In re Troutman Enters., Inc.*, ___ B.R. ___ (B.A.P. 6th Cir. 2000), considers the extent of creditors' claims in the context of an involuntary bankruptcy petition that is filed against a reorganized Chapter 11 debtor after conversion to Chapter 7. In that case the Panel holds that for purposes of 11 U.S.C. § 303(b), prepetition creditors do have claims against the reorganized entity even after conversion.

# I.    ISSUES ON APPEAL

The first issue on appeal is whether the proceeds of a life insurance policy that the Debtor purchased before filing a Chapter 11 case, but did not disclose, are property of the bankruptcy estate that was converted to Chapter 7 after plan confirmation.  The second issue is whether the doctrine of judicial estoppel precludes the Surviving Shareholders from asserting any right to the policy.

# II.    JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal.  The United States District Court for the Southern District of Ohio has authorized appeals to the BAP and a "final order" of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1).  A bankruptcy court's order granting summary judgment is a final appealable order which is reviewed de novo.  *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880 (B.A.P. 6th Cir. 1999).  "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination."  *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted).

# III.    FACTS

On July 11, 1986, Troutman Enterprises, Inc. ("TEI") purchased a $500,000 life insurance policy insuring the life of Larry Troutman, a shareholder and officer of TEI.  The policy was issued by Nationwide Life Insurance Co.  TEI filed a Chapter 11 petition on April 23, 1992.  TEI was both the owner and the beneficiary of the policy at the time of the filing.  TEI's did not disclose its interest in the policy in its initial bankruptcy papers or at any time before the confirmation of its plan.

TEI's amended plan of reorganization was confirmed on September 1, 1993.  Article V of the plan provides for the effect of confirmation and for execution of the plan:

> Confirmation of the Plan of Reorganization shall be in accordance with 11 U.S.C. § 1141, except to the extent as otherwise provided for in the confirmed Plan.  All property of the estate shall revert to the Debtor at confirmation including adversarial proceedings and the Debtor shall continue its operation and make payments provided for in the confirmed Plan.

On January 4, 1996, the case was converted to a Chapter 7 case. Donald F. Harker, III, was appointed as the Chapter 7 trustee. On April 22, 1996, while the Chapter 7 case was pending and without the Trustee's consent, TEI executed documents which purported to transfer ownership of the policy to Roger Tee Enterprises, Inc., a related corporation. After this transfer, TEI remained the named beneficiary under the policy.

On April 25, 1999, Larry Troutman died and the death benefits became payable to TEI. On May 14, 1999, TEI filed an amendment to schedule B which for the first time disclosed its interest in the policy. Following this disclosure, the Trustee commenced the adversary proceeding that is the subject of this appeal.

The Trustee filed a complaint against Nationwide for turnover of the policy death benefits. Turnover was requested on the premise that the policy was an asset of the estate under 11 U.S.C. § 541(a)(1) and the death benefits were an asset of the estate under 11 U.S.C. § 541(a)(6).

The Surviving Shareholders filed a motion to intervene as third-party defendants in the turnover proceeding, which was granted by agreement. Nationwide interpleaded the death benefits and was dismissed from the adversary proceeding.

The Surviving Shareholders filed a motion to dismiss the adversary proceeding under FED. R. CIV. P. 12(b)(6) or for a summary judgment dismissing the complaint. The Trustee opposed the motion. The bankruptcy court entered an order that the motion would be treated as a request for summary judgment. (December 13, 1999 Order.) The court also entered an order notifying the parties that "it would also consider the filings that exist in the Chapter 11 Estate Case . . . , particularly the schedules filed by [TEI] and the various disclosure statements and plan confirmation documents, by taking judicial notice of those filings as they exist in the Chapter 11 Case[.]" (September 3, 1999 Order.)

The Surviving Shareholders argued that the policy revested in TEI, as the reorganized debtor, on confirmation of the plan and did not become an asset of the Chapter 7 estate upon conversion of the case.

The Trustee argued that the Surviving Shareholders lacked standing to participate in the adversary proceeding or to recover the death benefits. He also argued that the policy was property of the Chapter 7 estate because it was not scheduled or administered and therefore did not revest in the reorganized debtor upon confirmation. Finally, he

argued that TEI and the Surviving Shareholders were judicially estopped from asserting any claim to the policy based on Debtor's failure to disclose it during the Chapter 11 case.

The bankruptcy court held that all property of the estate revested in the reorganized debtor on confirmation of the plan and that the subsequent conversion did not bring the property back into the estate. The Trustee does not challenge this conclusion. The court ruled, however, that the default provision of 11 U.S.C. § 1141(b), under which estate property vests in the reorganized debtor, did not apply with respect to the policy because the Debtor had failed to disclose it in accordance with the requirements of the Bankruptcy Code. In support of this conclusion the court relied on the doctrine of judicial estoppel as well as case law discussing 11 U.S.C. § 554, which deals with the abandonment of property. The bankruptcy court then concluded:

> pursuant to the above authority, TEI's failure to comply with the Code's requirements to disclose the existence of the [policy] during the Chapter 11 proceeding prevented that asset from being administered in the Chapter 11 case. Thus, the [policy] remained property of the Chapter 11 estate and did not revest in the Reorganized Debtor. As discussed previously, property which does not revest in a reorganized debtor upon confirmation becomes property of the Chapter 7 estate upon conversion.

The bankruptcy court entered an order authorizing the distribution of the interpleaded funds in accordance with the decision.

## IV. DISCUSSION

The general rule is that all property of a Chapter 11 bankruptcy estate vests with the reorganized debtor upon confirmation of the Chapter 11 plan. Section 1141(b) & (c) provide:

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

> (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(b) & (c). In the present case, neither the plan nor the order confirming the plan contains any provisions altering the effect of § 1141(b) & (c).

Nothing in the Code provides that the postconfirmation conversion of a Chapter 11 case to Chapter 7 alters the effect of § 1141(b) & (c). Section 348 (a) states, "Conversion of a case . . . constitutes an order for relief under the chapter to which the case is converted, but . . . does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348 (a). Section 348 provides that the date of the original Chapter 11 filing serves as the commencement date for the Chapter 7 case. Under § 541 all of a debtor's legal and equitable interests are property of the estate. However, under § 1141(b) all property of the estate vests with the debtor upon confirmation of the plan. Accordingly, no provision of the Bankruptcy Code provides for the property to revest in the estate upon conversion from Chapter 11 to Chapter 7 and there is no property in the Chapter 7 estate unless the plan specifically provides for property to remain in the estate. *See In re Winom Tool & Die , Inc.*, 173 B.R. 613 (Bankr. E.D. Mich. 1994); *In re T.S.P. Indus., Inc.*,117 B.R. 375 (Bankr. N.D. Ill. 1990); *Ohio Dept. of Taxation v. H.R.P. Auto Ctr., Inc.* (*In re H.R.P. Auto Ctr., Inc.*), 130 B.R. 247 (Bankr. N.D. Ohio 1991); *In re T.S. Note Co.* 140 B.R. 812 (Bankr. D. Kan. 1992).

Some courts have rejected this plain meaning interpretation of the Code. Using policy arguments, these courts have held that the property of the postconversion Chapter 7 estate is the property of the reorganized debtor on the date of conversion. *See Abbott v. Blackwelder Furniture Co. of Statesville, Inc.,* 33 B.R. 399 (W.D.N.C. 1983); *Bezner v. United Jersey Bank (In re Midway, Inc.)*, 166 B.R. 585 (Bankr. D.N.J. 1994); *General Elec. Credit Corp. v. Nardulli & Sons Co.* (*In re Nardulli & Sons Co.*), 66 B.R. 871, 876 (Bankr. W.D. Pa. 1986), *rev'd on other grounds*, 836 F.2d 184 (3d Cir. 1988); *In re Pauling Auto Supply, Inc.*, 158 B.R. 789, 795 (Bankr. N.D. Iowa 1993). The bankruptcy court rejected this approach, as does the Panel.

In the present case, the bankruptcy court determined that because the insurance policy had not been disclosed in the schedules, it did not vest in the reorganized debtor upon plan confirmation. In holding that the policy was property of the converted Chapter 7 bankruptcy estate, the bankruptcy court cited cases applying judicial estoppel and other cases applying § 554. For the following reasons, the Panel disagrees with the bankruptcy court's determination.

Section 1141(b) plainly states that unless the confirmed plan or order confirming plan provides otherwise, *all* property of the estate vests in the reorganized debtor on confirmation. There is no explicit exception in the Code for undisclosed property.

The Bankruptcy Act did provide for the result that the bankruptcy court reached here. The Act stated that only property "dealt with" by the plan vested in the reorganized debtor upon confirmation. *See Greenheart Durawoods, Inc. v. PHF Int'l Corp.*, 1994 WL 652434 (S.D.N.Y. Nov. 18, 1994). Applying the Act's terms, an undisclosed asset would not vest with the reorganized debtor because it was not "dealt with" by the plan. However, under the plain language of the Bankruptcy Code, all property of the estate vests with the reorganized debtor.

Moreover, the bankruptcy court's reliance on § 554(d) was misplaced. Section 554(d) provides that "[u]nless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). However, § 554(d) is not applicable in the context of a Chapter 11 case with a confirmed plan. *Wells Fargo Bank, N.A. v. D & L Nicolaysen* (*In re D & L Nicolaysen*), 228 B.R. 252, 261 (Bankr. E.D. Cal. 1998). A Chapter 11 trustee (or debtor in possession) does not "abandon" property upon plan confirmation. Rather, upon plan confirmation, pursuant to § 1141(b), all of the property of the estate vests with the reorganized debtor.

The bankruptcy court also relied on the doctrine of judicial estoppel in determining that TEI's interest in the policy did not vest with the reorganized debtor upon confirmation. The Sixth Circuit Court of Appeals has identified the three elements of this doctrine as follows:

> The doctrine of judicial estoppel "forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" *Teledyne Indus., Inc. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1217 (6th Cir. 1990). Courts apply judicial estoppel in order to "preserve[] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment." *Teledyne*, 911 F.2d at 1218. The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court. *Id*.

*Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir. 1998) (alteration in original).

In this case, the bankruptcy court stated:

> In *Rooster, Inc. v. Raphael Roy, S.R.L.*, the court relied on a theory of judicial estoppel to conclude that if a Chapter 11 debtor had failed to disclose an asset as property of the estate, the asset remained property of the estate available for distribution to creditors. The court reasoned that the Chapter 11 debtor must be estopped from itself recovering the asset postconfirmation because "[i]n such an instance, creditors would have improperly voted to accept a distribution from the debtor's estate without knowing all its material assets; one of the debtor's assets . . . would have been hidden by the debtor in an attempt to retain it after the bankruptcy was administered." *Rooster, Inc. v. Raphael Roy, S.R.L.* (*In re Rooster, Inc.*), 127 B.R. 560, 573 (Bankr. E.D. Pa. 1991).

*Troutman*, 244 B.R. at 768.

Initially, the Panel notes that in *Rooster,* the court ultimately did not invoke the doctrine of judicial estoppel. Beyond that, neither the bankruptcy court in this case nor the court in *Rooster* fully explained how the three elements for judicial estoppel that the Sixth Circuit established in *Griffith* apply to reach the conclusion that an undisclosed asset does not vest in a reorganized debtor.

In his appellate brief, the trustee offers an explanation:

> In the Chapter 11 proceeding TEI's schedules, its Disclosure Statement and it's Plan of Reorganization took the position, as a result of not scheduling the policy, that it did not exist. Confirmation of TEI's Plan of Reorganization by the Bankruptcy Court necessarily constituted judicial acceptance of TEI's position that the policy did not exist. (See: 11 U.S.C. § 1129.) TEI's current position that the policy exits [sic] is obviously contradictory to TEI's original position. As a result imposition of the theory of judicial estoppel is warranted.

In the context of this case, the Panel concludes that the mere failure by the Debtor to disclose the policy in its schedules did not constitute a "position" that the Debtor argued to the court. The Panel further concludes that this failure did not result in a finding by the court accepting the Debtor's "position" that the policy did not exist. Both of these elements are necessary for judicial estoppel. *Griffith*, 135 F.3d at 380. There was simply no evidence of either element in this case. The record is devoid of any instance in which the court found that the Debtor had no interest in the life insurance policy based on the Debtor's specific representation to that effect.

Further, although the bankruptcy court was properly disturbed by the possible inequities that might result from an undisclosed asset in a Chapter 11 case, the Code

offers other means to address such a problem, such as revocation of confirmation under 11 U.S.C. § 1144, filing an involuntary petition against the reorganized debtor under 11 U.S.C. § 303, or pursuing state law claims. Also, regarding a creditor who has a specific interest in property, such as a lien or security interest, § 1141(c) provides that if such an asset is not disclosed and is therefore not dealt with by a plan, the asset is not free and clear of the interest of such creditor when it vests in the reorganized debtor.

Finally, the Surviving Shareholders argue that under § 541(a)(5)(C), TEI's interest in the policy as beneficiary was never property of the original Chapter 11 bankruptcy estate. Because the Panel has already determined that the order requiring turnover must be reversed, the Panel need not decide this issue and declines to do so.

## V. CONCLUSION

TEI's interest in the policy vested in the reorganized debtor upon plan confirmation even though that interest was not disclosed, and the Bankruptcy Code does not provide for such property to become property of the estate when the case was thereafter converted to Chapter 7. The elements of judicial estoppel do not apply in this case. The bankruptcy court's order granting turnover of the policy to the Chapter 7 trustee is **REVERSED**.