*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0060P (6th Cir.)
File Name: 04a0060p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DANIEL P. KIELY,
  *Plaintiff-Appellant,*

  *v.*                              No. 02-2054

HEARTLAND REHABILITATION
SERVICES, INC., and HEALTH
CARE AND RETIREMENT
CORPORATION, d/b/a
GEORGIAN BLOOMFIELD,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 01-40149—Paul V. Gadola, District Judge.

Argued: February 5, 2004

Decided and Filed: February 26, 2004

Before: NELSON, GILMAN, and ROGERS, Circuit
Judges.

———————————

———————————

## COUNSEL

**ARGUED:** Charles M. Sirhal, Bloomfield Hills, Michigan,
for Appellant.    Susan Healy Zitterman, KITCH,
DRUTCHAS, WAGNER, DeNARDIS & VALITUTTI,
Detroit, Michigan, for Appellee. **ON BRIEF:** Charles M.
Sirhal, Bloomfield Hills, Michigan, for Appellant. Susan
Healy Zitterman, Karen B. Berkery, KITCH, DRUTCHAS,
WAGNER, DeNARDIS & VALITUTTI, Detroit, Michigan,
for Appellee.

   NELSON, J., delivered the opinion of the court, in which
ROGERS, J., joined. GILMAN, J. (pp. 10-11), delivered a
separate opinion concurring in part and dissenting in part.

———————————

## OPINION

———————————

   DAVID A. NELSON, Circuit Judge. This is a disability
discrimination case brought under Michigan law. The
question we are asked to decide is whether, notwithstanding
the plaintiff's attempt to reconcile what looked like
inconsistent positions, the fact that the plaintiff had signed a
social security disability application in which he swore that he
was "disabled" and "unable to work" precluded him as a
matter of law from showing that he was capable of
performing the essential functions of his job.

   We conclude that the statements made by the plaintiff in his
application for social security disability benefits were not
necessarily inconsistent with the claim that he could do his
job. We further conclude that the plaintiff proffered an
adequate explanation of the seeming inconsistency. The
district court having entered summary judgment for the

defendant on an estoppel theory with which we find ourselves unable to agree, under the circumstances presented here, we shall vacate the judgment and remand the case for further proceedings.

I

The plaintiff, Daniel Kiely, suffers from severely impaired vision caused by a degenerative eye disease. The Social Security Administration determined in the late 1970s that Mr. Kiely was legally blind, and he was awarded social security disability insurance ("SSDI") benefits on the strength of that determination. Mr. Kiely received SSDI benefits while attending college and, to the extent permitted by law, while working thereafter.

In April of 1995 Mr. Kiely was hired by defendant Heartland Rehabilitation Services, Inc., as a physical therapy assistant. In that capacity he worked with patients in a gymnasium and in the patients' rooms, helped patients to perambulate with walkers and other assistive devices, and transported patients in wheelchairs.

Mr. Kiely's performance was evaluated in July of 1995 and in April of 1996, 1997, and 1998. He received overall ratings ranging from "average" (1995 and 1998) to "definitely above average" (1997). None of his evaluations suggested that Mr. Kiely's visual impairment prevented him from performing his duties safely and effectively.

In July of 1998 a co-worker expressed concern that Mr. Kiely's poor vision created a "potentially hazardous situation." In a memorandum to Kiely's superiors, the co-worker said that Kiely had bumped into people and inanimate objects, had failed to notice that beds were occupied, had not seen that a patient was wearing a gait belt, and had been oblivious to individuals handing him papers.

On July 10, 1998, Heartland terminated Mr. Kiely's employment. Heartland's human resources manager explained in a letter dated July 29, 1998, that the termination was prompted by "increasing concerns" about the safety of Kiely and his patients. In addition to mentioning the incidents described in the co-worker's memorandum, the letter alluded to an episode in which a wheelchair that Mr. Kiely was pushing became stuck at an elevator door. The letter also recounted efforts Heartland had made to accommodate Kiely's impairment, including a rearrangement of gym equipment and a reduction in Kiely's bedside assignments. (The latter accommodation had been made at Mr. Kiely's request.)

After receiving unemployment compensation for about a year, Mr. Kiely applied for SSDI benefits. His application stated that he "became unable to work because of [his] disabling condition on July 7, 1998," and said that he was "still disabled." Mr. Kiely began to receive SSDI benefits (some of which were for the latter part of 1998) in 1999.

With the filing of a complaint in a Michigan state court on May 17, 2001, Mr. Kiely commenced an action against Heartland for disability discrimination under both the Michigan Persons with Disabilities Civil Rights Act and Title VII of the U.S. Civil Rights Act of 1964. Heartland removed the case to federal district court.

Following discovery, Heartland moved for summary judgment. The company maintained that Mr. Kiely could not establish a prima facie case of discrimination under either Michigan law or Title VII. In the portion of its argument that is relevant here, Heartland submitted that by stating in his SSDI application that he was "disabled," Mr. Kiely had estopped himself from contending that he was capable of performing the essential functions of his job. In response to this argument, Mr. Kiely pointed out that because his blindness was a "listed" condition under the Social Security

Act, it entitled him to SSDI benefits regardless of his actual ability to do his job.

The district court, as we have seen, granted Heartland's motion for summary judgment. In so doing, the court held first that Title VII does not prohibit discrimination on the basis of disability. As to Mr. Kiely's state-law claim, the court held that Kiely had not adequately explained the apparent conflict between the representations in his SSDI application and his present claim. Mr. Kiely moved for reconsideration and, when that motion was denied, filed this timely appeal.

## II

Mr. Kiely has not appealed the summary judgment on his Title VII claim. The sole issue before us, therefore, is whether the statements in Kiely's SSDI application barred recovery on his Michigan disability discrimination claim as a matter of law. Our standard of review is de novo. See, *e.g.*, *Fox v. Van Oosterum*, 176 F.3d 342, 347 (6th Cir. 1999).

To prevail on an employment discrimination claim under the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1101 *et seq.*, a "plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Chmielewski v. Xermac, Inc.*, 580 N.W.2d 817, 821 (Mich. 1998). Mr. Kiely cannot prevail on his state-law claim, accordingly, if his blindness rendered him unable to perform the duties of a physical therapy assistant.

Under Michigan law, declarations of disability in an SSDI application do not necessarily bar a plaintiff from proving a claim of disability discrimination. See, *e.g.*, *Tranker v. Figgie International, Inc.*, 585 N.W.2d 337, 339-40 (Mich.

App. 1998), *appeal denied*, 603 N.W.2d 785 (Mich. 1999). The Michigan courts recognize that the word "disabled," when used in the social security context, does not necessarily connote a literal inability to work. For one thing, the Social Security Act's definition of "disability" does not take into account the possibility of accommodation – thus, "a plaintiff could be disabled under the SSA and still be qualified to perform the duties of his job . . . with reasonable accommodation." *Id.* at 339-40. For another thing, the social security regulations call for the awarding of SSDI benefits to any applicant who is not working and who has a "listed" impairment (see 20 C.F.R. pt. 404, subpt. P, app.1), regardless of whether the applicant is actually able to work. See *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 804 (1999). A declaration of disability in an SSDI benefits application is thus not always equivalent to a factual statement that the applicant cannot perform the essential functions of his job. See *id.* at 802. On the contrary, such a declaration "often implies a context-related legal conclusion, namely, 'I am disabled for purposes of the Social Security Act.'" *Id.*

At least as often, of course, the term "disabled" is used in SSDI applications in a literal sense. Accordingly, a plaintiff alleging disability discrimination "cannot simply ignore the apparent contradiction that arises out of" an earlier claim that he is disabled. *Id.* at 806. Applying *Cleveland* – an Americans with Disabilities Act case – to cases brought under Michigan law, the Michigan Court of Appeals has held that the plaintiff must offer a plausible explanation of the seeming contradiction. See, *e.g.*, *Kerns v. Dura Mechanical Components, Inc.*, 618 N.W.2d 56, 59-60 (Mich. App. 2000), *appeal denied*, 624 N.W.2d 187 (Mich. 2001). "To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable

accommodation.'" *Cleveland*, 526 U.S. at 807, *as quoted in Kerns*, 618 N.W.2d at 59.

In our judgment, the explanation offered by Mr. Kiely was sufficient to get him past the estoppel hurdle. In his memorandum opposing Heartland's motion for summary judgment, Kiely argued that

"[t]here is no conflict or misrepresentation on Plaintiff's part for the purpose of reinstating his statutory entitlement to Social Security benefits, based upon his prior determination as being statutorily blind by the SSA, and, at the same time, being fully competent to return to the position of a PTA . . . ."

He then cited a Seventh Circuit case, *Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir. 1992), where that court held that "a finding of disability" under the Social Security Act "is consistent with a claim that the disabled person is 'qualified' to do his job." Mr. Kiely emphasized the following language from *Overton*:

"First, the [Social Security Administration] may award disability benefits on a finding that the claimant meets the criteria for a listed disability, without inquiring into his ability to find work within the economy. . . . As it turns out, the [Social Security Administration] granted benefits to the plaintiff on this basis." 977 F.2d at 1196.

It is true that *Overton* deals with the effect of an administrative determination of disability rather than the effect of statements made by the applicant. But the thrust of Mr. Kiely's explanation is reasonably clear: he applied for SSDI benefits on the basis of his legal blindness – a listed impairment – and not on the basis of an inability to work. For that reason, he suggested, the statements made in his SSDI application were not inconsistent with his claim that he could perform the duties of his job.

It seems to us that a reasonable juror could accept Mr. Kiely's explanation. That is, a reasonable juror could conclude that when Kiely stated in his application that he was "disabled" and "unable to work," he meant only "I am entitled to SSDI benefits." As we have previously recognized, such statements in an application for SSDI benefits are "open to interpretation":

"In determining precisely what the plaintiff 'admitted' in the application, one must consider the context in which the statements were made. Portions of the [SSDI] application and other forms require the applicant merely to check off boxes without comment, or require the applicant to fill in blanks with little room given for elaboration. In short, the employee may not have a fair opportunity to accurately explain the details of the employee's medical condition and his ability or inability to work for purposes of [disability discrimination laws]." *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 382 (6th Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999).

The record of the case at bar does not disclose whether the application forms completed by Mr. Kiely afforded him a "fair opportunity" to specify that a listed impairment, rather than an actual inability to work, made him eligible for benefits. A reasonable juror could easily find, however, that his legal blindness was the basis on which Mr. Kiely expected to receive benefits. He had received benefits because of blindness in the past, and, given the degenerative nature of his disease, he had every reason to believe he was eligible to receive benefits on that basis again. Mr. Kiely thus had no need to claim that he was actually unable to work. Indeed, he testified under oath that he had not intended such a claim; when asked at his deposition whether he had applied for benefits "claiming to be totally disabled," Kiely responded, "No, blind." We think that a reasonable juror could accept this interpretation of the SSDI application.

Because the declarations of disability in Mr. Kiely's SSDI application can be interpreted as "context-related legal conclusion[s]" rather than "purely factual statement[s]" regarding inability to work, *Cleveland*, 526 U.S. at 802, the declarations do not preclude a finding that Kiely can perform the essential functions of his job. The district court erred in holding to the contrary.

### III

Heartland urges us to affirm the judgment on the alternative ground that Mr. Kiely is, in point of fact, unable to perform the essential functions of his job safely. This we decline to do. The district court did not evaluate the record as a whole to determine whether it presents genuine issues of material fact with respect to the underlying merits of Mr. Kiely's claim. Although we could undertake such an evaluation ourselves, it seems to us preferable to give the district court an opportunity, if asked, to do so in the first instance.

The order granting Heartland's motion for summary judgment is **VACATED**, and the case is **REMANDED** for further proceedings not inconsistent with this opinion.

---

---

### CONCURRING IN PART, DISSENTING IN PART

---

RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part. I fully concur in the majority's conclusion that Daniel P. Kiely is not estopped by his allegedly inconsistent positions from pursuing his disability-discrimination claim. But I disagree with the majority's decision not to undertake an evaluation of the record to determine whether this case presents a genuine issue of material fact regarding Kiely's ability to safely perform the essential functions of his job.

Based upon the record before us, I am convinced that we would have vacated the grant of summary judgment even if the district court had ruled against Kiely on the merits. Heartland, after all, was aware of Kiely's statutory blindness at the time of his hire and considered him qualified. Furthermore, the four formal evaluations of Kiely's job performance covering the duration of his employment at Heartland rated him as either "average" or "definitely above average." Finally, Kiely testified in his deposition that he had no difficulty transporting patients within the facility, that he was able to treat patients in their rooms, that he had no trouble negotiating hallways, and that he would not need any additional accommodations if he were to be reinstated at Heartland. This evidence seems more than sufficient to create a genuine issue of material fact. *See Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 383-84 (6th Cir. 1998) (holding that a genuine issue of material fact was created by the plaintiff's "proof that he had performed the sales associate job for approximately two years and had received favorable evaluations").

Permitting the district court to entertain a second motion for summary judgment under these circumstances will serve only

to delay the trial that this case ultimately merits. *See Salazar-Paucar v. I.N.S.*, 281 F.3d 1069, 1076 (9th Cir. 2002) ("[W]e generally do not remand when on the record before us, it is clear that we would be compelled to reverse [the BIA's] decision if it had decided the matter against the applicant.") (quotation marks omitted).  So although I would normally agree with the majority's proposition that we should give the district court the first crack at evaluating the underlying merits of a claim, I believe that to do so here would be counterproductive in light of a record clearly showing that a genuine issue of material fact exists regarding Kiely's ability to safely perform the essential functions of his job.

I would therefore vacate the order granting Heatland's motion for summary judgment and remand for a trial on the merits.